UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMAD YOUNIS ABDULSALAM SAWAHREH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | Civil Action No. 22-1456 (JEB) |

## MEMORANDUM OPINION

Plaintiff Dr. Mohammad Younis Abdulsalam Sawahreh, a physician, is a Jordanian citizen who resides in Qatar. He awaits a decision on his application for a J-1 visa, which he requires to enroll in a pediatric residency program to which he has been accepted in the United States. He interviewed for the visa on April 27, 2021, at the U.S. Embassy in Doha but has not yet received his visa nor had his application finally refused. Plaintiff contends that the fifteen months that he has now waited for a final decision constitutes an unreasonable delay under the Administrative Procedure Act and asks the Court to order the Government Defendants to act. Defendants now move to dismiss. Because the Court finds that a decision on Sawahreh's visa application has not been unreasonably delayed, it will grant the Motion.

**I.      Background**

The Court begins with an overview of the process for obtaining a J-1 visa and then turns to the background of Plaintiff's claims and the procedural history of the case.

1

A.  J-1 Visas

The J-1 visa is a nonimmigrant "exchange visitor" visa that allows a foreign citizen to travel to the United States in order to teach or study.  See U.S. Dep't of Homeland Sec., Exchange Visitors (April 22, 2020), https://bit.ly/3d1Nq32 (USCIS J-1 Visa Information); 8 U.S.C. § 1101(a)(15)(J).  As the J-1 visa is a nonimmigrant visa, J-1 visitors must return to their country upon completion of their program.  Id.

The Department of State administers the J-1 exchange-visitor program by designating various public and private organizations as sponsoring entities.  See USCIS J-1 Visa Information.  To obtain a J-1 visa, an applicant must first "apply for and be accepted into an exchange visitor program through a designated sponsoring organization in the United States." U.S. Dep't of State, Exchange Visitor Visa (last visited Sept. 12, 2022), https://bit.ly/2wnrSFl. Upon acceptance to an approved program, she must then complete Form DS-160 (the Online Nonimmigrant Visa Application), submit biometric data, and attend an interview with a Department of State consular officer to determine eligibility for the visa.  Id.; see 8 U.S.C. § 1201(a)(1)(B); 22 C.F.R. §§ 41.102, 41.103.

Once an applicant has properly completed each of these components, a consular officer "must issue, refuse the visa, or," in circumstances inapplicable here, "discontinue granting the visa."  22 C.F.R. § 41.121(a).  The officer need only make an initial, rather than final, determination about an applicant's visa eligibility.  In other words, under Section 221(g) of the Immigration and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility.  See 8 U.S.C. § 1201(g); U.S. Dep't of State, Administrative Processing Information (last visited Sept. 12, 2022), https://bit.ly/2GO3jEg.  The

Department of State publishes visa-application statuses online, but, beginning in March 2020, changed its website to display the status of applications undergoing further administrative processing as "refused." U.S. Dep't of State, Visas: CEAC Case Status Change (March 5, 2020), https://bit.ly/3DkqCWP (Status Change Memo). This reporting change in such circumstances reflects "no change in such applicants' actual cases." Id.

B. Plaintiff's Application

According to the Complaint, which the Court credits at this juncture, Sawahreh is a Jordanian citizen residing in Qatar and a licensed medical doctor. See ECF No. 1 (Compl.), ¶ 23. On March 19, 2021, he received an offer to participate in a three-year pediatric residency program at the Edward M. Sparrow Hospital in Michigan. Id., ¶ 24. To enter the United States and enroll in the program, Plaintiff must acquire a J-1 Visa. Id., ¶ 25.

Sawahreh submitted a Form DS-160 on April 20, 2021. Id., ¶ 26. He then attended an interview at the U.S. Embassy in Doha, Qatar, on April 27, after which the consular officer "refused [Plaintiff's visa] under Section 221(g)" of the INA because his case "require[d] administrative processing." Id., ¶¶ 26-27; see ECF No. 1-1 (Embassy Administrative Processing Instructions). The Embassy emailed Sawahreh the same day, informing him that he would need to complete and return a Form DS-5535 — a supplemental questionnaire — as part of his visa-application process. See Compl., ¶ 28; ECF No. 1-2 (Embassy Request). Plaintiff returned the form two days later. See Compl., ¶ 29; ECF No. 1-3 (Pl. DS-5535 Email). As requested by the Embassy, Sawahreh also submitted his passport, but the document was returned to him three days later without a visa. See Compl., ¶ 30.

Since then, Plaintiff, his sponsoring organization, and others acting on his behalf have frequently followed up with the Embassy to check the status of his visa application. Id., ¶¶ 31-

3

32, 34-36. In response to Sawahreh's latest inquiry, the Embassy confirmed that his case remained in administrative processing, which could "take anywhere from a few weeks up to several months to complete in some cases." Id., ¶ 33; see ECF No. 1-4 (Embassy Inquiry Reply). As a result of this delayed adjudication, Sawahreh has had to defer enrolling in the residency program. Id., ¶ 38. If he cannot secure a visa before the currently deferred start date (which Plaintiff does not specify in his Complaint), he will lose his spot in the program. Id.

    C.  Procedural History

Hoping to expedite a result, Plaintiff filed this suit on March 24, 2022, naming the United States Department of State, Secretary of State Anthony Blinken, the United States Department of Homeland Security, DHS Secretary Alejandro Mayorkas, U.S. Embassy-Doha Consul Sarita Glassburner-Moen, and U.S. Embassy-Doha Consular Officers, in their official capacity, as Defendants. See Compl., ¶¶ 10–15. He contends that they have unreasonably delayed the processing of his J-1 visa, in violation of the APA. Defendants now move to dismiss, see ECF No. 11 (Def. MTD); Plaintiff opposes and cross-moves for summary judgment. See ECF No. 13 (Pl. MSJ).

**II.**    **Legal Standard**

As the Court resolves this case without addressing Plaintiff's Cross-Motion, it sets out only the standards for Defendants' Motion to Dismiss, which invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all

material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III.   Analysis

As a threshold matter, Defendants first contend that the Court lacks subject-matter jurisdiction over this case given the consular non-reviewability doctrine. After explaining why it disagrees, the Court will then turn to whether Plaintiff's unreasonable-delay claim should be dismissed on the merits. So finding, the Court need not address Defendants' ancillary assertions regarding dismissal of certain parties on other grounds.

### A.   Subject-Matter Jurisdiction

The D.C. Circuit has explained that "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing

Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999)).  This is so because such decisions "may implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." Id. (citing Trump v. Hawaii, 138 S. Ct. 2392, 2418–19 (2018)) (internal quotation marks and alterations omitted).  Under the INA, consular officers have "exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations," Saavedra Bruno, 197 F.3d at 1159, and they also decide whether "to grant, deny or revoke any visa." Baan Rao, 985 F.3d at 1024.  Judicial review of claims otherwise barred by this doctrine is permissible only under two exceptions not relevant here.  See id. at 1024–25.

      Defendants argue that consular non-reviewability applies here because Plaintiff's application was "withheld" within the meaning of Baan Rao when it was placed in administrative processing under Section 221(g).  They contend that this suit thus asks the Court to "compel a further decision on a visa application that has already been refused," Def. MTD at 6, which is categorically proscribed by Baan Rao.

      While this position has some appeal, courts in this district have explained that the doctrine of consular non-reviewability precludes review only of "final visa determinations" and "does not apply to challenges regarding decisions that are not yet final." Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); Shen v. Pompeo, No. 20-1263, 2021 WL 1246025, at *3 (D.D.C. Mar. 24, 2021) ("[T]he doctrine of consular non-reviewability does not apply where the government has not made a final visa decision.").  Cases in administrative processing "have not been finally refused," Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 292 (D.D.C. 2016), and are therefore subject to

judicial review for undue delay. Ibrahim v. U.S. Dep't of State, No. 19-610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020); Shen, 2021 WL 1246025, at *4.

Defendants believe that Baan Rao's mention of "withholding" as the relevant agency action rebukes the line of cases finding delays in administrative processing to be reviewable. The Circuit there, though, addressed a challenge to final visa denials and not to processing delays. See 985 F. 3d at 1023. Indeed, that decision's withholding language is merely quoted from Saavedra Bruno, 197 F.3d at 1159, which preceded the line of district-court cases purportedly overturned by Baan Rao. Other courts in this district have previously rejected as meritless the same argument by the Government that Baan Rao expanded the consular non-reviewability doctrine to shield cases in administrative processing from review. See, e.g., Giliana v. Blinken, No. 21-1416, 2022 WL 910338, at *2 (D.D.C. Mar. 29, 2022); Meyou v. U.S. Dep't of State, No. 21-2806, 2022 WL 1556344, at *2 (D.D.C. May 17, 2022). This Court agrees.

Pointing out that State's website lists Plaintiff's application status as "refused" rather than as in "administrative processing," Defendants further argue that Sawahreh's claim challenges the substantive result of the consular officer's decision on his application rather than the officer's delay in adjudicating that application. See Def. MTD at 7. Defendants ask the Court to construe the listed status as evidence that Plaintiff has in fact been given a final decision. State itself, however, has acknowledged that applications in administrative processing are listed as "refused" on the site. See Status Change Memo. Defendants concede, moreover, that "additional processing might cause a consular officer to revisit or reconsider . . . refusal" of Plaintiff's visa, see Def. MTD at 7, and correspondence between the Embassy and Sawahreh indicates that his application is still undergoing such administrative processing. See Compl., ¶ 33; Embassy

Inquiry Response. This Court again joins others in this district in holding that Defendants cannot "unsubscribe" from judicial review of cases in administrative processing for unreasonable delay by simply changing their website. See Meyou, 2022 WL 1556344, at *2; Giliana, 2022 WL 910338, at *2; Ibrahim, 2020 WL 1703892, at *5.

As Sawahreh's case remains in administrative processing and has not been finally refused, the doctrine of consular non-reviewability is "inapplicable to this claim, as Plaintiff[] do[es] not seek review of any decision but instead of 'the Government's failure to decide.'" Milligan v. Pompeo (Milligan I), 502 F. Supp. 3d 302, 317 (D.D.C. 2020); see Bagherian v. Pompeo, 442 F. Supp. 3d 87, 93 (D.D.C. 2020) (collecting cases). The Court therefore has the subject-matter jurisdiction necessary to consider the merits of Plaintiff's claim.

B. Unreasonable Delay

Turning to those merits now, the Court understands that the thrust of Sawahreh's suit is his allegation that the State Department has unreasonably delayed the adjudication of his application for a J-1 visa, which has remained in administrative processing for more than fifteen months. He contends that such delay violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and which directs courts to "compel agency action . . . unreasonably delayed." Id. § 706(1). Defendants rejoin that any delay in processing Sawahreh's application is not yet unreasonable. The Court agrees.

To evaluate the reasonableness of agency delay, the Court examines six factors set out in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (internal quotations, citations, and emphasis omitted); see also Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). These six factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Board, 750 F.2d 81, 86 (D.C. Cir. 1984). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee, 336 F.3d at 1102.

It is appropriate to resolve this issue at the motion-to-dismiss stage because "this record contains enough facts to evaluate the TRAC factors now." Sarlak v. Pompeo, No. 20-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (collecting cases and evaluating TRAC factors on motion to dismiss); see also Dastagir v. Blinken, No. 20-2286, 2021 WL 2894645, at *2 (D.D.C. July 9, 2021); Zandieh v. Pompeo, No. 20-919, 2020 WL 4346915, at *5 (D.D.C. July 29, 2020).

The considerations contemplated by the TRAC factors can be grouped into four basic inquiries here. "First, is there any rhyme or reason — congressionally prescribed or otherwise

— for [an agency]'s delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)?  [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?" Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

    1.    TRAC *Factors 1 and 2*

The first two TRAC factors favor Defendants.  These appraise "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." Ctr. for Sci. in the Pub. Interest, 74 F. Supp. 3d at 300.  Congress has not supplied a rule of reason by imposing a statutory deadline on J-1 visa processing, so the Court "turn[s] to case law as a guide" to the content of the rule applicable here.  Milligan I, 502 F. Supp. 3d at 318 (quoting Sarlak, 2020 WL 3082018, at *6).  The Court recognizes that "Congress has given [the State Department and other agencies] wide discretion in the area of immigration processing." Id. (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)) (alteration in original).  While "'[t]here is 'no per se rule as to how long is too long' to wait for agency action,'" In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting In re Int'l Chem. Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992)), "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Sarlak, 2020 WL 3082018, at *6 (citation omitted) (collecting cases).  Given that the delay here is of only fifteen months, it remains on the reasonable side of that line.

For his part, Plaintiff offers two arguments for why a delay of fifteen months is nevertheless unreasonable in the J-1 context.  He first claims that the State Department has

established a processing time of between sixty and ninety days as the metric against which to judge the reasonableness of delay. See Pl. Opp. at 11. Sawahreh supports this contention by pointing to an email he received from the Doha Embassy advising him that administrative processing can take anywhere from "a few weeks [up] to several months" in some cases. Id.; see Embassy Inquiry Response. He further notes that State has "indicated to other J-1 visa applicants that '[m]ost administrative processing is resolved within 60 to 90 days of the visa interview.'" Pl. Opp. at 11 (quoting ECF No. 13-5 (U.S. Embassy-Islamabad Timeline)). This Court, however, previously found "no compelling reason why the 'public facing announcements' of an agency should be understood to supply the granular substance of a rule of reason." Milligan v. Blinken (Milligan II), No. 20-2631, 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021). Even if such announcements could supply that substance, the sixty- to ninety-day timeline Plaintiff cites was communicated by a different consular post from Doha and is thus of limited use given potential differences between posts.

    Plaintiff next contends that because his application is for a nonimmigrant visa, delays here should be distinguished from cases countenancing much longer delays in processing immigrant visas. See ECF No. 16 (Pl. Rep.) at 3. As his J-1 visa is inherently highly time sensitive — Plaintiff notes that he has now waited longer to receive a visa decision than the visa period itself — Sawahreh urges the Court to adopt a more stringent standard for unreasonable delay than that appropriate for "much heftier and consequential immigrant visa" processing. Id. at 3. Yet, aside from Plaintiff's own conclusory assessment of the relative urgency of his case, he offers no legal authority to support applying a stricter rule of reason here. Indeed, courts considering nonimmigrant visas have, as Plaintiff concedes, declined to find longer delays than Plaintiff's unreasonable. See Shen, 2021 WL 1246025, at *8 (finding that first two TRAC

factors favored agency in case involving 21-month delay on F-1 student visa). In any event, whether or not the type or length of Sawahreh's visa makes his application more time sensitive than, say, an asylum application is not for Plaintiff or this Court to decide. That is exactly the kind of question within the purview of the wide discretion in immigration processing that Congress has given Defendants.

    2. TRAC *Factors 3 and 5*

The third and fifth TRAC factors, which look to the effects of agency delay, tip slightly in Plaintiff's favor. These factors weigh "the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Defendants' delay harms not only Sawahreh by deferring his education and jeopardizing his career trajectory but also those children who would benefit from Plaintiff's care, both during and after his residency. Defendants' primary rebuttal — namely, that the Court can remedy these harms only at the expense of other applicants, see Def. MTD at 15 — is an "argument[] about the effects of expediting delayed action on other priorities," which "go[es] to the heart of the fourth factor, not the third and fifth." Milligan II, 2021 WL 3931880, at *8. "[T]he nature of [Plaintiff's] interests and the prejudice to those interests from delay in processing" his visa weigh in his favor. Tate v. Pompeo, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).

    3. TRAC *Factor 4*

The fourth factor examines "the effect of expediting delayed action on agency activities of a higher or competing priority," TRAC, 750 F.2d at 80, and "carries the greatest weight in many cases." Milligan I, 502 F. Supp. 3d at 319. It does so here as well and favors Defendants. Plaintiff's application is delayed because of "resource-allocation decisions" that "do not lend

themselves to judicial reordering[s] [of] agency priorities." Id. (quoting Bagherian, 442 F. Supp. 3d at 96) (internal quotation marks omitted and alterations in original). "This Circuit has refused to grant relief, even [though] all the other factors considered in TRAC favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." Id. (quoting Mashpee, 336 F.3d at 1100) (internal quotation marks omitted and alterations in original).

Plaintiff explicitly asks the Court to do just that. He argues that "Defendants should complete processing of his J-1 visa application before the later-filed applications they appear to be prioritizing." Pl. MSJ at 11. "[T]he very premise of [this] argument is that there is a backlog of visa applicants and that [Plaintiff] should be prioritized for processing ahead of others," Milligan II, 2021 WL 3931880, at *9, undercutting his contention that "no orderly . . . queue" of applications exists. See Pl. MSJ at 11. "Courts have routinely held that compelling an agency to reorder a line of applicants without any net gain would impermissibly interfere with the agency's unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." Milligan II, 2021 WL 3931880, at *9 (citing Didban v. Pompeo, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)) (internal quotation marks and alterations omitted); see also Tate, 513 F. Supp. 3d at 150 ("While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities.").

Plaintiff does not avoid a similar outcome here by arguing that "Defendants must take steps to balance the workload or marshal resources so that individual applicants are not prejudiced based on where they apply." Pl. Rep. at 2. "To the extent that Plaintiff[] allege[s] that the lack of agency resources is an issue for the political branches to solve, [he] fail[s] to

13

account for the reality that the constraints on visa processing of all types arise from extrinsic pressures caused by the pandemic, which Defendants have taken reasonable steps to address." Milligan II, 2021 WL 3931880, at *9 (citation omitted); see Verma v. U.S. Citizenship & Immigr. Servs., No. 20-3419, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020).

> 4. TRAC *Factor 6*

The final TRAC factor considers whether the agency's bad faith caused the delay. Plaintiff's Complaint does not allege that a decision on his application was delayed intentionally or was the result of any impropriety. See generally Compl. Therefore, "the good faith of the agency in addressing the delay weighs against equitable relief." Milligan I, 502 F. Supp. 3d at 319 (internal quotation marks omitted).

The balance of these factors currently tilts against the Court's intervention in this case. See Sarlak, 2020 WL 3082018, at *6 (collecting cases where courts, "[t]aking the [TRAC] factors as a whole," found no unreasonable-delay claim). This delay has concededly harmed Sawahreh, but the rule of reason supplied by the caselaw, judicial deference to agency priority-setting, and the absence of bad faith all suggest that the delay is not yet unreasonable. The Court nonetheless "recognizes that the delay is substantial and imposes hardship on Plaintiff[], and it encourages the Government to act on the application as soon as possible." Didban, 435 F. Supp. 3d at 177.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 21, 2022